IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* § <br> CHERYL TAYLOR, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> HEALTHCARE ASSOCIATES OF § <br> TEXAS, LLC, *et al.*, § <br> § <br> Defendants. § | | Civil Action No. 3:19-CV-02486-N |

# MEMORANDUM OPINION AND ORDER

This Order addresses Relator Cheryl Taylor's sealed motion for leave to file a third amended complaint [360]. Because Taylor failed to show good cause, the Court denies the motion.

## I. ORIGINS OF THE DISPUTE

This case arises from claims under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), against Defendants Healthcare Associates of Texas, LLC and Healthcare Associates of Irving, LLP (collectively, "HCAT"), David Harbour, Jeff Vines, Kristian Daniels, Dr. Charles L. Powell, Dr. David Deems, Dr. Walter Gaman, and Dr. Terrence Feehery (collectively, "Defendants"). Taylor alleges that she observed HCAT and its agents, the individual defendants, employ fraudulent Medicare billing practices. The Court has discussed Taylor's factual allegations at some length, *see, e.g.*, *United States ex rel. Taylor v. Healthcare Associates of Tex.*, *LLC*, 2023 WL 3294141 (N.D. Tex. May 5, 2023),

and the Court will not recount them in great depth here, but the relevant procedural history is as follows:

Taylor filed this action under seal in October 2019. *See* Rel.'s Orig. Compl. [2]. The Government investigated until July 2021, but chose to not intervene. *See* Notice of Non-Intervention [16]. On January 20, 2022, the Court entered a scheduling order and set trial for August 14, 2023. *See* Order Jan. 20, 2022 [45]. In May 2023, the Court granted a nine-month continuance, re-setting trial and all deadlines, ordering the parties to confer on the present status of this case and report to the Court within 30 days regarding the Scheduling Order. Order Granting Continuance [248]. In this Order, the Court explicitly stated that "[r]equests for extensions of the deadlines contained in this Order are unlikely to be granted." *Id.* at 2. The parties did not report to the Court within 30 days regarding the scheduling order, likely due to the parties' inability to submit a joint submission in compliance with the Court's discovery order. *See* Order May 5, 2023 [247]; Joint Mot. Ext. to File Joint Submission [255]; Joint Mot. to Am. Order Setting Deadline [259]; Joint Submission on Discovery [278].

On June 20, 2023, Taylor filed a motion to appoint a special master stating that "[r]esolving these technical discovery disputes promptly is necessary to meet the pretrial deadlines Judge Godbey extended on May 5." Rel.'s Mot. to Appoint. Special Master at 1 [286]. The Court granted the motion. "[i]n light of the burden already imposed on the Court and the parties' seeming inability thus far to meaningfully cooperate . . . ." Order Sept. 14, 2023 at 2 [308]. The Court appointed retired Judge Jeff Kaplan as special master in this litigation to resolve all discovery disputes raised by the parties and bestowing him

MEMORANDUM OPINION AND ORDER – PAGE 2

with the discretion to modify and reconsider prior deadlines related to discovery. *Id.* at 2–3. On December 8, 2023, the Court re-set the trial date for November 4, 2024, in accordance with the Proposed Agreed Revised Schedule parties submitted to Special Master Judge Kaplan. Am. Scheduling Order [334]. The Court adopted the deadlines in its scheduling order as submitted by the parties in their Proposed Agreed Revised Schedule. *Id.*

The deadline for Taylor to file a motion for leave to join additional parties was April 20, 2022, and the deadline to file a motion for leave to amend pleadings under Rule 15(a) was July 19, 2022. *See* Scheduling Order [45]. Taylor sought leave to amend her complaint twice, once on April 20, 2022, to add Healthcare Associates of Irving, LLP as a defendant, and a second time on June 30, 2022, to add more defendants and allegations. Rel.'s Mot Leave File Am. Compl. [57]; Rel.'s Mot. Leave File Second Am. Compl. [71]. The Court granted both motions. Order Apr. 25, 2022 [59]; Order July 21, 2022 [86]. The bulk of the discovery issues began in March 2022 with the parties disputing the discoverability of Defendants' Medicare claims records in the possession of the third-party clearinghouse, Novitas Solutions, Inc. ("Novitas"), which submitted Defendants' claims to Medicare. *See* Mot. to Cont. [193]. From there, the parties engaged in an over twenty-month discovery dispute regarding whether the Court should compel production of these records, *see* Order Nov. 23, 2022 (J. Ramirez) [157], and once the Court ordered production of the records, whether the records should be limited in scope and how to limit the scope of the records produced. Order II Jan. 10, 2023 (J. Ramirez) [178]. On November 1, 2023, Special Master Kaplan ordered the Novitas claims to be produced subject to Taylor's

MEMORANDUM OPINION AND ORDER – PAGE 3

filters. *See* Rel.'s Mot. at 5.[1] The parties received the first production of the Novitas records on December 7, 2023. *Id.* On February 13, 2024, Taylor filed the instant motion seeking leave to file a third amended complaint.

## II. RULE 16(B)(4) LEGAL STANDARD

"Motions for leave to amend are typically governed by Rule 15(a) (2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and then by Rule 15(a)(2)." *Orthoflex, Inc. v. Thermotek, Inc.*, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011). A party may amend its pleadings after the expiration of a scheduling order deadline "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4); *see also S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). Courts consider four factors in determining whether good cause exists: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C.*, 315 F.3d at 536 (alterations in original) (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

## III. TAYLOR FAILED TO SHOW GOOD CAUSE EXISTED

Because the time to seek leave to amend has expired, the Court applies the Rule 16(b)(4) analysis. The Court finds that good cause does not exist under the Rule 16(b)(4) factors.

---

[1] Taylor does not cite to a document in the record concerning this fact, and the Court could not find anything in the record pertaining to this fact either. But Defendants do not dispute this fact, *see generally* Defs.' Resp. [365], so the Court accepts this fact as true.

MEMORANDUM OPINION AND ORDER – PAGE 4

### *A. Taylor Fails to Provide a Sufficient Explanation for Her Failure to Timely Move for Leave to Amend*

Taylor justifies her delay in seeking amendment because she needed to compare the medical records already in Taylor's possession since October 2022, *see* Defs.' Resp. at 7, with the Medicare claims records produced by third-party Novitas in December 2023. Rel.'s Reply at 1–2 [369]. Taylor casts blame on Defendants playing the largest role in delaying her access to these documents. *Id.* at 5. However, Defendants' vigorous opposition to Taylor's access to the Novitas records was justified because, as Taylor asserted herself, "[t]he problem of how to identify qualifying claims records was not trivial." Rel.'s Mot. at 5. Even Judge Ramirez entered an order limiting the scope of discoverable Medicare claims records to seven categories, specifically ordering in January 2023 that discovery is limited to Medicare Claims and issues alleged to be fraudulent in the Second Amended Complaint ("SAC"). Order I Jan 10, 2023 (J. Ramirez) [177]; Order II Jan. 10, 2023 (J. Ramirez). Judge Ramirez's caution in opening the Novitas records discovery to all Medicare claims was justified as because "[i]n cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Furthermore, "Rule 9(b) also prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *Id.* at 191.

Furthermore, Defendants adequately cast doubt on Taylor's explanation that she could only amend once she had the Novitas records produced in December 2023.

Defendants argue that Taylor possessed materials needed to expand her fraud allegations since late 2022 and early 2023. Defs.' Resp. at 8. Upon filing its response,

> Defendants have produced **<u>43 volumes of discovery material</u>** collectively containing approximately 400 gigabytes of discovery materials, including roughly 2 million documents spanning 4.8 million pages. The discovery materials include: (1) Medicare claims data records from Defendants' internal billing system for the period of 2015–2021; (2) 300 gigabytes of compressed medical records and patient data; (3) policies and procedures; (4) e-mails from 27 custodians; (5) text messages from employees' personal devices; (6) provider employment and credentialling records; (7) responses to hundreds of written discovery requests; (8) testimony from a corporate representative concerning, *inter alia*, Defendants' billing and financial systems; and (9) much more.

Def.'s Resp. at 6–7 (emphasis in original). Besides the compressed medical records, which Defendants produced in August 2023, most of the above listed discovery was produced by October 2022. *Id.* at 7. Even more, based on the emails provided in January 2023, Taylor asked Judge Ramirez in January 2023 to expand the scope of discovery on the same grounds that Taylor uses in the instant motion.

> [B]ased in part on evidence the Defense produced, demonstrating that there are aspects to the claims that [Taylor] did not know at the time that she filed the second amended complaint, but which are, in fact, true and would be evidence of the false claims. For example, it's not the case, apparently, that the Defendants only substituted founding physicians for the uncredentialed physicians under Medicare. It appears they also used other physicians.

App. Defs.' Resp. at 003–004 [366]. Based on Taylor's own statements, it is clear that Taylor was aware of her need to amend for over a year before filing the instant motion. Taylor insists that seeking amendment in early 2023 would have been futile because if she "sought leave to amend based on those emails, Defendants would have properly attacked the amendment as speculative and then sought to dismiss under Rule 9(b)." Rel.'s Reply

at 4. But Taylor never sought amendment; therefore, whether the amendment would not have passed the Court's scrutiny is mere speculation and cannot be used as a shield against NBTY's attack on Taylor's untimely amendments.

In fact, the Court is not convinced that if Taylor had included these amendments in the SAC, the Court would have dismissed them. *Grubbs* is instructive:

> In sum, the "time, place, contents, and identity" standard is not a straitjacket for Rule 9(b). Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim Act. We reach for a workable construction of Rule 9(b) with complaints under the False Claims Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

565 F.3d at 190. Taylor's alleged scheme survived a motion to dismiss. Order May 5, 2023 [249]. These amendments are an extension of the same scheme the Court denied dismissal of before. Furthermore, Taylor admits that the emails provided evidence that alluded to conduct that could amount to actionable false claims, *See* Rel.'s Reply at 4, which could have provided the Court with the strong inference that claims were submitted.

As Taylor asserts herself, "[t]he federal rules constrain litigants to plead only allegations for which they believe adequate 'evidentiary support' exists or will exist." Rel.'s Reply 2 (quoting *Colony Ins. Co. v. Peachtree Const. Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007))). Taylor battled for nearly a year to gain access to the Novitas records beyond the claims already alleged — a clear indication that Taylor believed evidentiary support would exist in the unproduced

records to support the amended she now seeks leave to add. What is worse, if Taylor had added these amendments to the SAC, and they withstood the Court's scrutiny, Taylor could have streamlined the Novitas discovery dispute because the records Taylor sought would have been clearly discoverable in connection with the Taylor's amended allegations. Thus, the Court is unconvinced that Taylor did not have the facts available to move to amend prior to the December 2023 Novitas production. Taylor should shoulder partial blame in her untimeliness of these amendments.

Furthermore, it is telling that Taylor did not seek one fact deposition prior to filing this motion. *See* Defs.' Resp. at 7. Taylor argues that the Court "implicitly accept[ed] [her] argument that it was more efficient to conduct fact depositions after key documents (*i.e.* the Medicare claims and medical records) were produced, and found good cause existed to grant [her] continuance"; therefore, the same rational should apply here. Rel.'s Reply at 7. But Taylor mischaracterizes the Court's position in this matter. The Court's rationale for finding good cause was due to "the ongoing discovery needs of both Relator and Defendants," taking no stance on when the parties should take fact depositions. Order Granting Continuance at 1. In fact, if taking fact depositions could have allowed Taylor to test her theory regarding the additional physicians and departments to bolster her allegations for earlier amendments, this, no doubt, would have been the more efficient route. As stated in the preceding paragraph, the amendments Taylor now seeks could have greatly reduced the parties' discovery dispute over the Novitas records, and Taylor's inaction aggravates her undue delay. Accordingly, the Court finds that Taylor's

explanation for her delay does not provide a support for good cause to allow a late amendment.

### B. Taylor's Delay in Seeking Amendment Overcomes the Purported Importance of the Amendments

Taylor argues that the amendments are important because "the amendments point to potentially hundreds of additional false claims." Rel.'s Mot. at 12. Courts in this district often find that a movant's failure to timely amend its claims detracts from the amendment's importance. *See Palomino v. Miller*, 2007 WL 1650417, at *2 (N.D. Tex. June 7, 2007) ("The only factor potentially weighing in Plaintiff's favor here is the importance of the amendment . . . . However, Plaintiff's lack of diligence in timely amending his complaint undercuts the importance of the amendment."); *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 2005 WL 2124126, at *8 (N.D. Tex. Sept. 1, 2005) ("While it is important for a court to allow amendment of claims so that cases may be heard on their merits, [movant's] failure to timely amend its claims undercuts the importance of the amended complaint."). Therefore, because of Taylor's untimeliness in seeking amendment, the Court finds the importance factor to be neutral at best.

### C. Late Amendments Will Cause Defendants to Suffer Undue Prejudice that a Continuance Cannot Cure

Taylor asserts that her proposed amendments "do not restart the action or add new legal claims" and "discovery will not be delayed or enlarged"; therefore, Defendants will not be prejudiced. Rel.'s Mot. at 13. Contrary to Taylor's position, Defendants are prejudiced by Taylor seeking amendment two months prior to fact discovery closing without adequate time to develop the record on the expanded fraud theories. *See* Am.

MEMORANDUM OPINION AND ORDER – PAGE 9

Scheduling Order; *see also Baylor*, 2005 WL 2124126, at *8 (N.D. Tex. Sept. 1, 2005) (Citing the addition of a cause of action two months prior to the close of discovery as a factor that could prejudice the nonmovant).

The Court acknowledges its lateness in ruling on this motion and that, at this time, all discovery has closed, and this case approaches its deadline for all motions. *See* Am. Scheduling Order. The Court acknowledges its ability to re-open and reset these deadlines and grant a continuance to cure this prejudice. However, even if the Court ruled on this motion prior to the close of discovery deadlines, allowing these amendments would have cause further undue delay in a nearly five-year-old case. Furthermore, with the long discovery battle present in this case and the parties' inability to meaningfully cooperate regarding the previous discovery issues, the Court is not inclined today to extend the discovery deadlines, nor would the Court have been inclined when Taylor filed the instant motion. Under these circumstances, the Court finds that a continuance would only exacerbate Defendants' prejudice, not cure it.

## CONCLUSION

On balance of the Rule 16(b)(4) factors, Taylor failed to show good cause for leave to amend her pleadings. Accordingly, the Court denies Taylor's motion.

Signed July 30, 2024.

_____
David C. Godbey
United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 10