ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES *ex rel.* TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:19-CV-2486-N |
| | § | |
| HEALTHCARE ASSOCS. OF TEXAS, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

COURT'S CHARGE – PAGE 1

The testimony of the witnesses, the exhibits introduced by the parties, any stipulations of fact, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven, constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

Do not let bias, prejudice or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in the community and holding the same or similar stations in life. The law does not give special treatment to any person. All persons and companies are equal before the law and must be treated as equals in a court of justice.

Unless otherwise instructed, Relator has the burden of proving their case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Relator has failed to prove any element of a claim by a preponderance of the evidence, then Relator may not recover on that claim.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of who may have

COURT'S CHARGE – PAGE 2

called them, and all the exhibits received in evidence, regardless of who may have produced them.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

You are the sole judges of the credibility or believability of each witness and the weight or significance to be given to the witness's testimony. In weighing the testimony of a witness, you should consider: the witness's relationship to a particular party; the witness's interest, if any, in the outcome of the case; the witness's manner of testifying; the witness's opportunity to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness, and intelligence; and the extent to which the witness's testimony has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole or in part.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other

COURT'S CHARGE – PAGE 3

things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

A witness may be "impeached" or discredited by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness's present testimony. If you believe that any witness has been so impeached, it is your exclusive right to give the testimony of that witness whatever credibility or weight, if any, as you think it deserves.

COURT'S CHARGE – PAGE 4

Remember that the lawyers' statements, objections, or arguments – whether made during the trial or during their opening and closing statements – are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case and, in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. However, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you. If a lawyer's question assumes that some fact is true and the witness did not agree with that assumption, the question itself is not evidence that the assumed fact is true. You should not consider or be influenced by the fact that during the trial of this case, counsel have made objections to the testimony, as it is their duty to do so, and it is my duty to rule on those objections in accordance with the law.

Certain charts and summaries not admitted in evidence, called demonstrative exhibits, have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

"Relator" means Cheryl Taylor.

"HCAT" means Defendant Healthcare Associates of Texas, LLC.

"HCAI" means Defendant Healthcare Associates of Irving, LLP.

"Defendants" means Defendants HCAT, HCAI, David Harbour, Kristian Daniels, Charles Powell, Walter Gaman, and Terrence Feehery.

HCAT and HCAI are legal entities. A legal entity acts only through its agents or employees. An agent's or employee's conduct and knowledge may be imputed to the employer if the employee or agent was acting within the scope of his or her authority and to benefit the legal entity.

The pertinent time frame for this case is January 1, 2015 through December 31, 2021. Do not consider liability for any alleged wrongful acts outside that time period.

MAC stands for Medicare Administrative Contractor. Medicare administers its program through private contractors known as MACs. In this case, the applicable MAC for Texas was Novitas.

## FALSE CLAIMS ACT

QUESTION NO. 1:

Did any of the Defendants named below violate the False Claims Act?

Answer "yes" or "no" for each named Defendant:

a.    HCAT

_____Yes_____

b.    HCAI

_____No_____

c.    David Harbour

_____No_____

d.    Kristian Daniels

_____No_____

e.    Charles Powell

_____No_____

f.    Walter Gaman

_____No_____

g.    Terrence Feehery

_____No_____

INSTRUCTIONS FOR QUESTION NO. 1:

Relator has brought this lawsuit, known as a qui tam action, under the False Claims Act on behalf of the United States against the Defendants. The False Claims Act authorizes the Attorney General of the United States, and private individuals, to bring claims on behalf

COURT'S CHARGE – PAGE 7

of the United States Government against an individual or a company alleged to have: first, knowingly presented to the Government a false claim that was material to the government's payment decision; or second, knowingly prepared a false record that was material to a false claim, or third, to have knowingly concealed or improperly avoided an obligation to repay money to the government.

A simple mistake in billing does not constitute a false claim.

To prove her "False Claim" cause of action, Relator must prove by a preponderance of the evidence that one or more of the Defendants knowingly presented, or caused to be presented, a material false or fraudulent claim for payment or approval.

To present or caused to be presented, a person must have knowingly assisted in causing the false or fraudulent claim to be submitted. But the person does not need to have actually submitted the claim form, received money from the government, or had a contract with the government.

To prove her "False Record" cause of action, Relator must prove by a preponderance of evidence that one or more of the Defendants knowingly made, used, or caused to be made or used, a false record or statement material to the government's decision to pay a false or fraudulent claim.

To prove her "Reverse False Claim" cause of action, Relator must prove by a preponderance of evidence that one or more of the Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the government.

COURT'S CHARGE – PAGE 8

This provision is known as a "reverse" false claim because, instead of creating liability for wrongfully obtaining money from the government, it creates liability for wrongfully avoiding payments that should have been made to the government.

An "obligation to pay or transmit money to the government" includes a legal duty to pay money to the government, including a legal obligation to refund the government when the government has paid more than what is called for under the law.

Avoiding an obligation occurs when a Defendant is put on notice of a potential issue, is legally obligated to address it, and does nothing.

Defendants had a legal duty to refund money to Medicare within 60 days of when they determined they had received an overpayment and quantified the amount of the overpayment or within 60 days of when they should have made that determination through the exercise of reasonable diligence.

A "claim" is a request or demand for money made to an agency or contractor of the United States Government, if the money is to be spent on behalf of the Medicare program.

HCAT's claims for payments from Medicare and submitted to Novitas are "claims" under the False Claims Act.

A claim can be false or fraudulent in several ways.

A claim can be false or fraudulent if it contains affirmative statements or representations that are untrue, such as certifying compliance with a statute or regulation that was not complied with, or if it demands payment for goods or services that were never provided to the Government.

COURT'S CHARGE – PAGE 9

A claim can also be false or fraudulent if it makes statements or representations that are true as far as they go, but are misleading in context because the claim fails to disclose important information — for example, that the claim violates material requirements established by Government agencies or Novitas.  Under the False Claims Act, a "half-truth" is false or fraudulent the same as an affirmative false statement or representation.

Under the False Claims Act, the term "material" means having a natural tendency to influence or be capable of influencing the payment or receipt of money or property.

A defendant acts "knowingly" if the defendant has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information.  You should consider the defendants' actual knowledge and beliefs, not what an objectively reasonable person may have known or believed or what industry practice was at the time a claim was submitted.

"Actual knowledge" means a defendant is aware that the claim, record, or statement is false.

"Deliberate ignorance" means defendants are aware of a substantial risk that their claims or records are false, but intentionally avoid taking steps to confirm the truth or falsity.

"Reckless disregard" means a defendant is conscious of a substantial and unjustifiable risk that their claims or records are false but submit the claims anyway.

Medicare requires that all claims for payment must correctly identify the person who was the "rendering provider" or "supervising provider."  When a claim is submitted to Medicare, the signing provider certifies that the claim is accurate and the services were

COURT'S CHARGE – PAGE 10

medically necessary. The signing provider also certifies that the claim complies with all Medicare laws, regulations, and program instructions.

Relator alleges Defendants submitted false claims of seven different types.

The seven categories are: (i) Defendants submitted false claim for services by providers who were not eligible to bill Medicare; (ii) Defendants billed Medicare for ancillary services (e.g. laboratory tests, imaging procedures, and injections, etc.) ordered by one physician under the name of a founding physician who neither ordered nor performed the service; (iii) Defendants regularly violated Medicare "incident to" regulations by establishing a policy of submitting claims for services rendered by mid-level providers as though a physician had rendered them to increase reimbursements; (iv) Defendants submitted claims to Medicare even though the underlying medical records had not been completed or signed; (v) Defendants performed annual physicals and changed the procedure codes to induce Medicare to pay for them; (vi) Defendants billed Medicare for procedures performed by medical assistants, such as annual wellness visits and "initial preventative physical examinations," though Medicare does not pay for medical assistants to perform these services; and (vii) when patients came in for their annual wellness visits, Defendants ordered a standard panel of diagnostic laboratory tests, knowing Medicare does not pay for those tests, and submitted claims for the tests.

You are not to consider any claims falling outside these seven categories.

Medicare does not pay for services provided to patients unless the provider obtains a National Provider Identifier number ("NPI"), enrolls in Medicare, and receives Medicare billing privileges from the MAC, in this case Novitas. This process is commonly called

COURT'S CHARGE – PAGE 11

becoming "credentialed." Credentialed providers may assign their right to collect Medicare payments to the medical practice that employs them.

When a provider enrolls in Medicare or reassigns his or her billing privileges to a new entity, Medicare rules set the earliest date for which that provider can submit Medicare claims. The effective date is the date the MAC received the application for credentialing. A provider may bill for services provided up to thirty (30) days before the effective date.

Medicare covers a "welcome to Medicare" visit for beneficiaries called an "IPPE," and annual visits thereafter called an Annual Wellness Visits ("AWV"). These visits are intended for a provider to perform a health risk assessment of the Medicare patient and develop or update a personalized prevention plan for that patient. The AWV includes counseling from the provider about the patient's medical and family history, any cognitive impairments, depression risk factors, functional ability, and other risk factors and conditions. A mandatory component of the IPPE and Annual Wellness Visits is patient counseling by the provider. The IPPE and AWV do not include clinical lab test, but providers may make appropriate referrals for these tests as part of the IPPE or AWV.

A provider may only bill Medicare for an IPPE or Annual Wellness Visit if the AWV was performed by a licensed health professional; for example, a physician, physician assistant, nurse practitioner, clinical nurse specialist, or registered dietitian.

Relator also alleges HCAT billed false claims to Medicare for services performed by medical assistants in the HCAT PEP department that required the exercise of medical judgment.

COURT'S CHARGE – PAGE 12

Medicare pays for only reasonable and necessary services provided by qualified personnel.

Additionally, Texas law requires a person to have a license to practice medicine. Medical assistants are not licensed providers in the state of Texas. Unlicensed persons are not qualified in Texas to exercise medical judgment or diagnose or treat disease.

Medicare rules permit payment for only those diagnostic tests that are ordered by a licensed provider who is treating a patient "for a specific medical problem."

The fact that a service or treatment may be performed by a physical therapist does not disqualify other properly licensed and trained providers from performing such service or treatment if within the scope of his or her license and training, or from supervising the provision of such service or treatment by properly trained and qualified personnel.

For claims submitted for payment of "covered imaging and clinical laboratory services," the claim "must contain the legal name [and NPI]" of the practitioner "who ordered the item or service."

Medicare prohibits payment "for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." To determine what is reasonable and necessary, CMS may issue national coverage determinations ("NCDs") that are nationally binding. Likewise, MACs may issue local coverage determinations ("LCDs") that are binding for their geographic region. LCDs cannot supersede NCDs, and neither LCDs nor NCDs can supersede statues or regulations.

COURT'S CHARGE – PAGE 13

Medicare pays for services performed by providers or non-providers that are "incident to" an initiating provider's services. Specific requirements must be met for "incident to" billing to be proper.

1. The services must be "[a]n integral, though incidental, part of the service of a [provider]" such that the provider "initiated the course of treatment." Services provided to a new patient, or a patient with a new problem, may not be billed "incident to."

2. The services must be "furnished under the direct supervision of a provider" who must be present in the office suite and immediately available to provide assistance.

3. The initiating provider must have "continuing active participation in and management of the course of treatment."

4. The physician or other practitioner supervising the auxiliary personnel need not be the same physician or practitioner who is treating the patient more broadly.

Laboratory diagnostic tests and imaging services may not be billed incident to.

If your answer to Question No. 1 is "yes" for any defendant, then answer the following question.  Otherwise do not answer the following question.

QUESTION NO. 2:

How ~~may~~ *many* false claims did each Defendant for whom you answered Question No. 1 "yes" knowingly submit or cause to be submitted?

*D CG*

Only answer for each Defendant for whom you answered Question No. 1 "yes."

a.    HCAT

_____21,844_____

b.    HCAI

_____O_____

c.    David Harbour

_____O_____

d.    Kristian Daniels

_____O_____

e.    Charles Powell

_____O_____

f.    Walter Gaman

_____O_____

COURT'S CHARGE – PAGE 15

g.    Terrence Feehery

If your answer to Question No. 1 is "yes" for any defendant, then answer the following question. Otherwise do not answer the following question.

QUESTION NO. 3:

Did any of the following Defendants conspire to violate the False Claims Act? Answer "yes" or "no" for each named Defendant:

a.    HCAT

_____Yes_____

b.    HCAI

_____Yes_____

c.    David Harbour

_____Yes_____

d.    Kristian Daniels

_____Yes_____

e.    Charles Powell

_____Yes_____

f.    Walter Gaman

_____Yes_____

g.    Terrence Feehery

_____Yes_____

COURT'S CHARGE – PAGE 17

INSTRUCTION FOR QUESTION NO. 3:

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member.

To find a conspiracy, Relator must show by a preponderance of the evidence:

First: That a defendant and at least one other person agreed to violate the False Claims Act;

Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose;

Third: That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one overt act in order to accomplish some object or purpose of the conspiracy; and

Fourth: That at least two of Defendants had a specific intent to defraud the government.

The overt act need not be of an unlawful nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to find that he or she conspired even though the defendant had not participated before and even though the defendant played only a minor part.

COURT'S CHARGE – PAGE 18

Relator does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, Relator does not need to prove that all of the details of the scheme alleged ~~in the indictment~~ were actually agreed upon or carried out. Nor must Relator prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a violation of the False Claims Act is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

## DAMAGES

I will now instruct you on damages. If you find a defendant liable, then you must determine the amount of damages to be awarded to the government. By instructing you on damages, I am not suggesting which party should win on any issue. These instructions are provided to guide you on the calculation of damages in the event you find a party liable, and thus must address the damages issue.

Compensatory damages cannot be based on speculation, for it is only actual damages that are recoverable. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative harm, but only for those damages which Relator actually demonstrated.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Relator prove the amount of the government's losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may

not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

If your answer to Question No. 3 is "yes" for two or more defendants, then answer the following question.  Otherwise, do not answer the following question.

QUESTION NO. 4:

What sum of money, if paid now in cash, would fairly and reasonably compensate the government for the amount of false claims paid or not refunded, if any?

Answer in dollars and cents, if any:

_$ 2,753,641.86_

INSTRUCTIONS FOR QUESTION NO. 4:

A payment may not be a false claim when paid, but may become a false claim if not properly refunded when known – defined above as a reverse false claim.  Do not double count a claim paid as both a false claim and an improperly not refunded reverse false claim.

DCG

If you did not answer Question No. ~~4~~ 3 "yes" for at least two Defendants, and you answered Question No. 1 "yes" for at least one Defendant, then answer the following question.  Otherwise do not answer the following question.

QUESTION NO. 5:

What sum of money, if paid now in cash, would fairly and reasonably compensate the government for the amount of false claims paid or not refunded, if any?

Answer in dollars and cents, if any, for each Defendant for whom you answered Question No. 1 "yes":

    a.    HCAT

$2,753,641.86

    b.    HCAI

$0

    c.    David Harbour

$0

    d.    Kristian Daniels

$0

    e.    Charles Powell

$0

    f.    Walter Gaman

$0

COURT'S CHARGE – PAGE 23

g.    Terrence Feehery

$0

INSTRUCTIONS FOR QUESTION NO. 4:

A payment may not be a false claim when paid, but may become a false claim if not properly refunded when known – defined above as a reverse false claim. Do not double count a claim paid as both a false claim and an improperly not refunded reverse false claim.

Do not count the same false claim against multiple defendants. That is, do not double count the amount of any false claims. If multiple defendants were involved in the submission of a false claim, the allocate the amount of the false claim among those defendants according to the responsibility for that false claim.

COURT'S CHARGE – PAGE 24

JURY DELIBERATIONS

It will shortly be your duty to deliberate and to consult with one another in an effort to reach a verdict. Your verdict must be unanimous. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case. Remember at all times, you are the judges of the facts.

You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.

The fact that I have given you in this charge instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted in any way as an indication that I believe a particular party should, or should not, prevail in this case.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a

COURT'S CHARGE – PAGE 25

presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it.

Do not deliberate unless all members of the jury are present in the jury room. For example, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

During your deliberations I will honor any reasonable work schedule you may set and will honor your reasonable requests regarding how frequently you wish to recess and for how long.

After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case. If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

SIGNED this 15th day of November, 2024.

David C. Godbey
Chief United States District Judge

COURT'S CHARGE – PAGE 26