IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,           §
*ex rel.* CHERYL TAYLOR,            §
                                    §
      Plaintiff,                   §
                                    §
v.                                  §     Civil Action No. 3:19-CV-02486-N
                                    §
HEALTHCARE ASSOCIATES OF            §
TEXAS, LLC, *et al.*,               §
                                    §
      Defendants.                  §

## MEMORANDUM OPINION AND ORDER

This Order addresses Relator Cheryl Taylor's motion for entry of judgment [635]. Because the Court finds there is sufficient evidence to support the jury's verdict, the Court grants the motion. However, the Court concludes that the False Claims Act's civil penalty violates the Excessive Fines clause as applied here, and instead imposes a reduced civil penalty of three times actual damages. Thus, the court will enter a separate final judgment imposing liability on defendant Healthcare Associates of Texas, LLC ("HCAT") for $16,521,851.16 in combined damages and penalties as well as post-judgment interest.

### I. ORIGINS OF THE MOTION

This case arises from claims under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), against Defendants HCAT, Healthcare Associates of Irving, LLP ("HCAI"), David Harbour, Kristian Daniels, Dr. Charles Powell, Dr. Walter Gaman, and Dr. Terrence Feehery. Taylor alleged that she observed the defendants employ fraudulent Medicare billing practices.

MEMORANDUM OPINION AND ORDER – PAGE 1

Following a two-week trial, the jury rendered a verdict finding HCAT (but no other defendants) liable for violating the FCA. Court's Charge 7 [632]. The jury found that HCAT submitted 21,844 false claims to Medicare, resulting in $2,753,641.86 in actual damages to the government. *Id.* at 15, 22. The jury also found all defendants liable for conspiracy to violate the FCA. *Id.* at 17. Taylor now moves for entry of final judgment upon the jury's verdict. Specifically, she seeks a judgment of $8,260,925.58 in trebled damages, $449,653,800 in civil penalties, and post-judgment interest. Rel.'s Br. 1 [636].

In response, defendants make four principal arguments: (1) the court must dismiss the conspiracy claims because they are barred by the intra-corporate conspiracy doctrine; (2) there is insufficient evidence to support the jury's finding on the number of false claims; (3) there is insufficient evidence to support the jury's finding on the amount of damages; and (4) the civil penalty requested by Taylor is unconstitutionally excessive as applied in this case. *See* Defs.' Resp. 3–5 [640]. Upon reviewing the record, the Court concludes that the civil conspiracy claims should be dismissed, there is sufficient evidence to support the jury's findings on the number of false claims and damages, and the FCA's civil penalty as applied in this case is unconstitutionally excessive.

## II. The Court Grants in Part Taylor's Motion for Judgment

After a jury has rendered a verdict, judgment as a matter of law contrary to the verdict is proper only when "there is no legally sufficient evidentiary basis" to support that verdict. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). Indeed, "a litigant cannot obtain judgment as a matter of law unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach

MEMORANDUM OPINION AND ORDER – PAGE 2

a contrary conclusion." *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc) (internal quotation marks omitted).  The Court must draw all reasonable inferences in the light most favorable to the verdict, as "it is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012).

### A.  The Court Dismisses the Civil Conspiracy Claim as a Matter of Law

First, Defendants argue that the civil conspiracy claim in this case must be dismissed under the intra-corporate conspiracy doctrine.  Defs.' Resp. 5–7.  Taylor, in reply, admits that dismissal "may be appropriate for the individual defendants," but argues that the evidence supports a finding that HCAT and HCAI conspired to violate the FCA.  Rel.'s Reply 12 [641].  Based on Taylor's waiver, and a plain application of the doctrine, the Court dismisses the conspiracy claims against the individual defendants: Harbour, Daniels, Dr. Powell, Dr. Gaman, and Dr. Feehery.  Then, the Court concludes that the conspiracy claims against HCAT and HCAI are also barred by the intra-corporate conspiracy doctrine.

To prove an FCA conspiracy, the relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).  However, there is "a long-standing rule in this circuit that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)

MEMORANDUM OPINION AND ORDER – PAGE 3

(quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). This doctrine also applies to prevent conspiracy liability between a parent corporation and a subsidiary. *See Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1192 (5th Cir. 1985) (stating that, in the antitrust context, "wholly owned subsidiaries are incapable of conspiring with their parent as a matter of law" (citing *Copperweld Corp. v. Indep. Tube Co.*, 467 U.S. 752 (1984))); *see also U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 856 (S.D. Tex. 2003) (applying *Deauville Corp.* to a False Claims Act case).

Here, the conspiracy between the two entities, HCAT and HCAI, must rest on the actions of the individual agents of those entities. To that point, Taylor specifically alleges in her complaint that these two entities "are closely affiliated," "report shared governing persons," "have the same management," and that the individual defendants in this case "were acting as agents for HCA-Irving and HCA-Texas." Second Am. Compl. ¶ 72 [89]. She further alleges that HCAI "submits claims to Medicare on behalf of most of the providers who are or have been employed by HCA-Texas." *Id.* ¶ 74. Neither party identifies any evidence in the record that contradicts these allegations.

Thus, the individual defendants — whose actions form the basis of the conspiracy claim — were acting as agents for both HCAI and HCAT simultaneously. That makes this a situation where the corporation is functionally conspiring with itself. If the acts of a corporation's agents cannot establish conspiracy with that corporation, it would be nonsensical for that one set of acts to suddenly become conspiracy when the agents happen to simultaneously act on behalf of two closely related entities. *Cf. Copperweld Corp.*, 467

MEMORANDUM OPINION AND ORDER – PAGE 4

U.S. at 772–73 ("Antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary . . . . Because there is nothing inherently anticompetitive about a corporation's decision to create a subsidiary, the intra-enterprise conspiracy doctrine 'imposes grave legal consequences upon organizational distinctions that are of de minimis meaning and effect.'" (quoting *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29 (1962))). Accordingly, the Court dismisses the conspiracy claims in this case as a matter of law.

### B. The Jury's Finding on Number of False Claims is Supported by Sufficient Evidence

At trial, Taylor alleged that Defendants submitted 41,669 false claims to Medicare. Trial Tr. Nov. 15, 2024, 33:6–9. The Court instructed the jury to consider seven categories of allegedly false claims. Court's Charge 11. The jury ultimately found HCAT submitted 21,844 false claims. Court's Charge 15. Now, Defendants argue that there is insufficient evidence to support the jury's finding on the number of false claims, both in total and within some, but not all, categories of claims. Defs.' Resp. 7. Upon reviewing the record, the Court concludes that the jury's findings are supported by sufficient evidence.

To prove a violation of the FCA, the relator must show:

(1) there was a false statement or fraudulent course of conduct;
(2) made or carried out with the requisite scienter;
(3) that was material; and
(4) that caused the government to pay out money or to forfeit moneys due.

*U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009). One situation where FCA liability attaches is where "any person . . . knowingly presents, or causes to be

presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The FCA defines "knowingly" as not only "actual knowledge" of information, but also "deliberate ignorance" or "reckless disregard of the truth or falsity of the information," and requires no "proof of specific intent to defraud." *Id.* § 3729(b)(1). The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

First, Defendants take issue with the "wrong provider" claims, arguing that claims can be billed under the name of the physician who supervised the relevant department. *Id.* at 9–10. On this subject, the Court instructed the jury that "Medicare requires that all claims for payment must correctly identify the person who was the 'rendering provider' or 'supervising provider.'" Court's Charge 10. However, for a claim to be submitted under the name of a supervising provider, it must meet the additional requirements for "incident to" billing. *See* Ex. 1093 (claim form in which submitter certifies that "the services on this form were medically necessary and personally furnished by me or were furnished incident to my professional service by my employee under my direct supervision"). The Court charged the jury on the requirements for incident-to billing. Court's Charge 14. It further charged that "[l]aboratory diagnostic tests and imaging services may not be billed incident to." *Id.* Thus, a claim can list the supervising provider if it is a proper incident-to claim, otherwise it must correctly identify the rendering provider. Defendants separately challenge the sufficiency of the evidence for incident-to claims, and the Court addresses that challenge later. As for the claims that cannot be submitted incident-to, the jury was entitled to find that they were false based on the evidence at trial.

MEMORANDUM OPINION AND ORDER – PAGE 6

The jury heard evidence that HCAT routinely submitted claims to Medicare under the name of a "founding physician" who oversaw a department at HCAT and was not involved in the specific patient's care.  *See* Trial Tr. Nov. 5, 2024, 8:17–10:25; Ex. 581. For example, Taylor introduced evidence of a claim for laboratory services (not the proper subject of incident-to billing) that identified Dr. Powell as the "rendering provider" while the medical chart for the patient showed Dr. Powell had not participated in the patient's care, and instead Dr. Lawrence had ordered the test.  *See* Ex. 391; Ex. 391A; Trial Tr. Nov. 6, 2024, 173:13–175:14.  And the jury further heard evidence that Medicare would not pay for a claim like this in which the rendering provider is misrepresented.  *See* Trial Tr. Nov. 11, 2024, 207:9–17, 209:2–211:4.  The jury was therefore entitled to find that claims like this were false.

Next, Defendants argue that there is insufficient evidence to support Taylor's "incident-to" claims because the law, as charged by the Court, does not include the documentation requirements Taylor relied on.  *See* Defs.' Resp. 11.  However, based on the evidence at trial, the jury was entitled to find that claims in this category were false. The Court charged the jury that "Medicare pays for services performed by providers or non-providers that are 'incident to' an initiating provider's services."  Court's Charge 14. One requirement for proper incident-to billing is that the "initiating provider must have 'continuing active participation in and management of the course of treatment.'"  *Id.* Another is that the "services must be 'furnished under the direct supervision of a provider' who must be present in the office suite and immediately available to provide assistance." *Id.*

MEMORANDUM OPINION AND ORDER – PAGE 7

The jury heard evidence that it was HCAT's practice to submit claims performed by "midlevel" (i.e., nonphysician) providers as if they were performed incident to a physician's care in order to receive higher reimbursement rates, even when the claim did not meet the criteria to be billed incident to.  *See* Trial Tr. Nov. 6, 2024, 177:13–178:12; Trial Tr. Nov. 11, 2024, 92:18–93:19.  The jury further heard evidence that Novitas — Medicare's claims processor for Texas — requires that the medical notes for an incident-to claim document the supervisor's presence in the office and the initiating physician's initiation of and continued involvement in the treatment.  *See* Trial Tr. Nov. 6, 2024, 187:11–188:14, 190:1–191:10; Ex. 1058.  And it heard that Medicare would not pay claims if it knew such documentation was not present.  *See* Trial Tr. Nov. 11, 2024, 206:8–207:2. From this, the jury heard Taylor's expert discuss how she used these criteria to identify 5,985 claims that in her opinion did not meet the requirements to be billed as incident to. *See* Trial Tr. Nov. 6, 2024, 196:22–198:17, 215:1–9, 220:23–221:2.  Accordingly, the jury was entitled to find the incident-to claims false based on this evidence.

Next, Defendants argue there is insufficient evidence to support Taylor's "uncredentialed" claims because her expert relied on Provider Transaction Access Numbers ("PTAN") even when the Medicare Program Integrity Manual did not include references to PTANs until after the relevant time period for this lawsuit.  *See* Defs.' Resp. 12–13.  However, the Court concludes there is sufficient evidence in the record to support a finding that these claims were false.

The Court instructed the jury that "Medicare does not pay for services provided to patients unless the provider obtains a National Provider Identification number ("NPI"),

MEMORANDUM OPINION AND ORDER – PAGE 8

enrolls in Medicare, and receives Medicare billing privileges from the MAC, in this case Novitas."  Court's Charge 11.  The jury then heard evidence that HCAT routinely billed services under the name of a different physician, who had not seen the patient, when the actual provider was not yet enrolled in Medicare.  *See* Trial Tr. Nov. 4, 2024, 120:18–126:4; Ex. 597.  For example, the jury saw a claim that was submitted under the name of Dr. Anderson, but the medical note showed that Deborah Croissant, not Dr. Anderson, performed all of the patient care that day.  *See* Ex. 404; 404A; Trial Tr. Nov. 6, 2024, 224:16–225:19.  This claim was for services rendered on Aug. 25, 2015.  Ex. 404, 404A.  However, Deborah Croissant was not enrolled in Medicare until Jan. 15, 2016.  Ex. 190; Trial Tr. Nov. 6, 2024, 59:19–25.  And the jury saw evidence that Taylor's experts identified 6,004 claims like this that were actually rendered by an uncredentialed provider.  *See* Ex. 1191.  Accordingly, the jury was entitled to find that claims like this were false.

Finally, Defendants argue that Taylor's "MA documentation" claims must fail because they are outside of the categories of claims that the Court instructed the jury to consider.  *See* Defs.' Resp. 14–15.  However, the Court's charge plainly encompasses these claims, as the Court instructed the jury to consider claims where "Defendants billed Medicare for procedures performed by medical assistants . . . though Medicare does not pay for medical assistants to perform these services" and where "Defendants submitted claims to Medicare even though the underlying medical records had not been completed or signed."  Court's Charge 11.  And the jury heard evidence that HCAT had medical assistants perform services and then bill the claim under a physician who had no involvement.  *See* Trial Tr. Nov. 6, 2024, 148:8–152:9.  And likewise the jury heard

MEMORANDUM OPINION AND ORDER – PAGE 9

evidence that Medicare would not pay claims where a medical assistant documented critical parts of the claim that should have been filled out by a physician.  *See* Trial Tr. Nov. 11, 2024, 211:5–213:14.  If an underlying medical record is filled out by a medical assistant where it should be filled out by a physician (or other licensed provider, such as a PA), then that medical record is not "completed or signed" as contemplated by the Court's charge.  Accordingly, the jury was entitled to find such claims false.

Then, because each category of claims challenged by the defendants has sufficient evidence to support a finding of falsity, the Court concludes the jury's overall finding of number of false claims is supported by substantial evidence.

### C.  The Jury's Damages Finding is Supported by Sufficient Evidence

At trial, Taylor alleged the Defendants submitted 41,669 false claims totaling $3,470,249 in payments.  Trial Tr. Nov. 15, 2024, 33:6–18.  The jury ultimately found HCAT liable for 21,844 false claims totaling $2,753,641.86 in actual damages.  Court's Charge 15, 22.  Defendants now argue that the jury's damages finding is not supported by sufficient evidence because all the evidence adduced at trial goes to the wrong measure of damages. Defs.' Resp. 17.  Specifically, they argue that the correct measure of damages is what the government would have paid for the claim had it known the truth, and they argue that Taylor only introduced evidence of the full value of the claims at issue.  *Id.*  However, the Court concludes there is sufficient evidence in the record to support the jury's verdict.

The jury heard substantial evidence that, for many types of claims alleged here, Medicare would not have paid any amount had it known the truth.  *See* Trial Tr. Nov. 11, 2024, 207:9–17 (Medicare would not pay for wrong provider claims), 206:11–15 (same for

incident-to claims), 211:5–11 (same for MA documentation claims), 214:11–19 (same for uncredentialed claims), 216:20–217:4 (same for PEP claims). And even if the jury believed that the actual damages suffered were not the full claim value (e.g., reducing false incident-to claims by 15% instead of 100%, as proposed by defendants, *see* Defs.' Resp. 19), the jury had a claim-level spreadsheet showing the total amount paid, organized by claim category, from which it could calculate such an alternate damages measure. *See* Ex. 1020. Accordingly, the jury's damages finding is supported by substantial evidence.

The FCA provides that violators are "liable to the United States Government for . . . 3 times the amount of damages which the Governments sustains." 31 U.S.C. § 3729(a)(1). And here, the jury found the government sustained $2,753,641.86 in actual damages. Court's Charge 22. Accordingly, the Court, in a separate document, will enter judgment against defendant HCAT for $8,260,925.58 in trebled damages.

### D.  The Court Concludes That the FCA's Statutory Penalty, as Applied Here, Violates the Excessive Fines Clause

The FCA provides that, in addition to treble damages, violators are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." 31 U.S.C. § 3729(a)(1). This civil penalty is applied on a per-claim basis. *See Kelsoe v. Fed. Crop Ins. Corp.*, 724 F. Supp. 448, 453 (E.D. Tex. 1988) ("The FCA permits recovery of multiple penalties, where a defendant has submitted several fraudulent claims." (citing *United States v. Bornstein*, 423 U.S. 303, 309 (1976))). The relevant time period for this case is Jan. 1, 2015, through Dec. 31, 2021. *See* Rel.'s Mot. 3. For claims submitted

between Jan. 1, 2015, and Nov. 2, 2015, the penalty range is between $5,500 and $11,000 per claim. 28 C.F.R. § 85.3(a)(9). And for the claims submitted on or after Nov. 3, 2015, the penalty range is $13,946 to $27,894 per claim. 28 C.F.R. § 85.5(a), tbl. 1.

In line with these ranges, Taylor moves the Court to impose a midpoint civil penalty of $8,250 for each of the 644 claims submitted before Nov. 3, 2015, and $20,920 per claim for the remaining 21,200 claims. *See* Rel.'s Mot. 13–15.[1] This would result in a total civil penalty of $448,817,000. The minimum penalty under the statute is $299,197,200 and the maximum is $598,436,800. Defendants respond by arguing that such a penalty, especially when compared to the $2.8 million actual damages finding, violates the Eighth Amendment's Excessive Fines Clause and the Due Process Clause. *See* Defs.' Resp. 22. Upon reviewing the record and applicable law, the Court concludes that the FCA's civil penalty, as applied in this case, constitutes an excessive fine and instead imposes a reduced penalty equal to three times actual damages.

The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., amend. VIII. To evaluate claims under the Excessive Fines Clause, courts must first determine whether the monetary forfeiture is a "fine" as set out in *United States v. Bajakajian*, 524 U.S. 321 (1998) and *Austin v. United States*, 509 U.S. 602 (1993). Then,

---

[1] Taylor states that there were 644 pre-Nov. 3 claims and 21,240 remaining claims. *See* Rel.'s Mot. 15. However, this adds up to 21,884 false claims. The jury found HCAT liable for 21,844 false claims. Court's Charge 15. Accordingly, the Court assumes this is a typographical error on Taylor's part and analyzes the civil penalty based on 644 pre-Nov. 3 claims and 21,200 remaining claims.

MEMORANDUM OPINION AND ORDER – PAGE 12

courts must assess whether the fine is "grossly disproportional to the gravity of the defendant's offense." *Bajakajian*, 524 U.S. at 337.

The Fifth Circuit has not directly held that the Excessive Fines clause applies to civil penalties under the FCA. *See U.S. ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 649 F. Supp. 3d 404, 424 (W.D. Tex. 2023), *appeal docketed*, No. 24-50176 (5th Cir.). However, multiple other circuit courts that have addressed this question have held that it does. *See, e.g.*, *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015); *United States v. Aleff*, 772 F.3d 508, 512 (8th Cir. 2014); *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001); *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021). *But see Stop Ill. Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 906–07 (7th Cir. 2024) (noting that the court had previously "voiced skepticism" as to whether the Eight Amendment applies to FCA civil penalties but declining to address the issue).

Here, the Court concludes that the FCA's civil penalty is a "fine" as set out in *Bajakajian*, and that therefore the Excessive Fines Clause applies. On this point, the Court finds the analysis in *Yates* to be persuasive. The *Yates* court, in discussing this point, stated:

> A payment constitutes a fine so long as "it can only be explained as serving in part to punish." In *Stevens*, the Supreme Court explained that the FCA's treble damages and statutory penalties "are essentially punitive in nature." It noted that "the very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." That is even more true of the FCA's statutory penalties — which are preset by Congress and compulsory irrespective of the magnitude of the financial injury to the United States, if any. And though FCA treble

> damages have a compensatory aspect, FCA monetary awards
> are, at least, partially punitive.

*Yates*, 21 F.4th at 1308 (cleaned up) (first quoting *Austin*, 509 U.S. at 610, and then quoting

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784–86 (2000)).

Then, in determining whether a fine is grossly disproportional to the gravity of the

offense, courts in the Fifth Circuit consider the following factors:

> (a) the essence of the defendant's crime and its relationship to
> other criminal activity; (b) whether the defendant was within
> the class of people for whom the statute of conviction was
> principally designed; (c) the maximum sentence, including the
> fine that could have been imposed; and (d) the nature of the
> harm resulting from the defendant's conduct.

*United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020).  Of course, this is not a criminal

case, but these factors can be adapted to the civil penalty context.  And here, the Court

concludes that the minimum civil penalty prescribed the FCA is grossly disproportional to

the gravity of HCAT's conduct.

The gravamen of this case was HCAT's submission of claims to Medicare in

violation of Medicare billing rules.  The alleged improprieties the jury considered included

submitting claims as incident to a physician's care without proper documentation,

submitting claims for services by providers not yet eligible to bill Medicare, and submitting

claims for services performed by medical assistants instead of qualified providers.  *See*

Court's Charge 11.  However, this is not a case where the defendants billed for fictitious

services.  Indeed, none of the categories of false claims the Court instructed the jury to

consider involved claims for services that were never performed.  *See id*.  Of course,

HCAT's misconduct here was significant.  But the Court views that this case is closer in

MEMORANDUM OPINION AND ORDER – PAGE 14

gravity to something like a "reporting offense," *see Bajakajian*, 524 U.S. at 337, than other types of false claims cases where the services are never provided. And there is no evidence that HCAT's conduct is related to other criminal or fraudulent activity.

As for the second factor, HCAT is certainly within the class of people for whom the FCA was principally designed. The FCA imposes liability on any person who defrauds or conspires to defraud the United States. *See* 31 U.S.C. § 3729(a)(1). It is the United States' "primary litigative tool for combatting fraud" against it and "is intended to reach all fraudulent attempts to cause the Government to pay our [sic] sums of money." S. REP. NO. 99-345, at 2, 9 (1986). HCAT, by submitting false Medicare claims, is "squarely in the FCA's crosshairs." *See Yates*, 21 F.4th at 1315.

Third, the minimum civil penalty is, of course, below the maximum that could have been imposed under the statute. In the usual context of forfeiture, comparison to the statutory fine amount is helpful, but here, where even the minimum statutory amount itself presents an excessive fines issue, this factor is not very useful.

And fourth, the magnitude of the harm in this case is significant, but it does not warrant a penalty of nearly one-third of one billion dollars. Certainly, the United States was harmed when it paid for false Medicare claims. To that point, the jury found the government suffered actual damages of around $2.8 million. *See* Court's Charge 22. Beyond this, the conduct of submitting false claims harms the government is ways that are difficult to quantify. *See, e.g.*, *United States v. Mackby*, 339 F.3d 1013, 1019 (9th Cir. 2003) ("Fraudulent claims make the administration of Medicare more difficult, and widespread fraud would undermine public confidence in the system."). As such, the harm

resulting from HCAT's conduct is significant.  However, even the minimum civil penalty

of $299,197,200 is vastly out of alignment with the harm to the government in this case.

This minimum penalty alone would amount to over one hundred times the amount of actual

monetary damages.  And while it is true that fraud on the system is detrimental in

nonquantifiable ways, the Court does not believe that such harms would necessitate a

penalty that is two orders of magnitude greater than the actual financial harm.  And this is

especially true where, as here, the actual damages are themselves "substantial."  *See, e.g.*,

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003).[2]

Additionally, even using the statutory minimum penalty here would result in a

ratio between civil penalty and actual damages that is grossly out of alignment with the

ratios in other similar cases.  For example, in *U.S. ex rel. Fesenmaier v. Cameron-Ehlen

Group, Inc.*, the court held that the FCA's minimum civil penalty violated the Excessive

Fines Clause as applied to that case.  715 F. Supp. 3d 1133, 1164–65 (D. Minn. 2024),

---

[2] In addition to its Eighth Amendment challenge, HCAT also directly argues that the Due
Process clause test for excessive punitive damages applies here.  *See* Defs. Resp. 23.  The
Court agrees that a comparison between the actual damages and the civil penalty can be
useful when assessing the Eighth Amendment question.  However, the Court also notes
that the Fifth Circuit has rejected the notion that the Due Process clause limits statutory
penalties.  *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 373–74 (5th Cir.
2012).  Specifically, the court in *Vanderbilt Mortgage* stated that *State Farm* is inapplicable
when challenging a statutory civil penalty because *State Farm* concerned "discretionary
jury awards of punitive damages rather than a fixed statutory-damage provision."  *Id.*  The
court noted that it was that "discretion, the arbitrariness that might accompany it, and
principles of fair notice" that concerned the Supreme Court in *State Farm*.  *See id.*  The
court then held that "[n]o such discretion or problem with notice is applicable here, because
the $120,000 award was mandated by statute as a minimum penalty."  *Id.*  Accordingly,
the Court concludes that the FCA's civil penalties are not limited by the Due Process
Clause.

*appeal dismissed*, 2024 WL 4026210, at *1 (8th Cir. 2024). In that case, the jury found the defendants liable for $43,694,641.71 in actual damages resulting from 64,575 false claims. *Id.* at 1156. The minimum civil penalty in that case would have been $358,445,780. *Id.* The ratio of penalty to actual damages there was only 8.2 to 1, and yet the Court still concluded that such a penalty would be grossly disproportionate to the defendants' conduct in violating the anti-kickback statute. *See id.* at 1142, 1164. Here, the ratio of penalty to damages is over 100 to 1, and is out of line with additional similar FCA cases. *See, e.g.*, *Drakeford*, 792 F.3d at 387–90 (holding that a penalty to actual damages ratio of 3 to 1 did not violate the Excessive Fines Clause); *Montcrieff*, 649 F. Supp. 3d at 409, 428 (same, with an 8 to 1 ratio).

Thus, upon considering the relevant factors here, the Court concludes that the FCA's minimum civil penalty is unconstitutionally excessive as applied in this case. The Court is mindful of the Fifth Circuit's instruction that if "the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional." *Suarez*, 966 F.3d at 387. However, the Court holds that this strong presumption has been rebutted in this case. The moderate severity of HCAT's conduct combined with the extreme disparity between the statutory penalty and the harm in this case lead the Court to the conclusion that even the minimum statutory penalty of nearly $300 million would be grossly disproportionate to HCAT's conduct. The Court views that a civil penalty to actual damages ratio of 3 to 1 is the maximum allowable under the Excessive Fines clause here. Accordingly, the Court will impose a civil penalty of $8,260,925.58, in addition to treble damages.

MEMORANDUM OPINION AND ORDER – PAGE 17

## CONCLUSION

Because sufficient evidence supports the jury's findings on number of false claims and damages, the Court grants Taylor's motion for entry of judgment.  However, because the Court holds that the FCA's civil penalty is unconstitutionally excessive as applied here, the Court instead imposes a reduced civil penalty of three times the actual damages. Accordingly, the Court will enter final judgment holding HCAT liable for $8,260,925.58 in treble damages and $8,260,925.58 in civil penalties, totaling $16, 521,851.16.  The Court will also impose liability for post-judgment interest beginning from the date of entry of final judgment.

Signed February 26, 2025.

David C. Godbey
Chief United States District Judge