IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> *ex rel.* CHERYL TAYLOR, § <br> § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> HEALTHCARE ASSOCIATES OF § <br> TEXAS, LLC, *et al.*, § <br> § <br>     Defendants. § | Civil Action No. 3:19-CV-02486-N |

## MEMORANDUM OPINION AND ORDER

    This Order addresses Defendant Healthcare Associates of Texas, LLC's ("HCAT") motion for new trial [651] and renewed motion for judgment as a matter of law [654]. For the reasons below, the Court denies both motions.

### I. Origins of the Motions

    This case arises from claims under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), against Defendants HCAT, Healthcare Associates of Irving, LLP, David Harbour, Kristian Daniels, Dr. Charles Powell, Dr. Walter Gaman, and Dr. Terrence Feehery. Taylor alleged that she observed the defendants employ fraudulent Medicare billing practices. Specifically, she alleged Defendants are liable for seven categories of false claims: (1) submitting claims by providers who were not eligible to bill Medicare; (2) billing for ancillary services ordered by one physician under the name of a "founding physician" who neither ordered nor performed the service; (3) violating Medicare "incident to" regulations by establishing a policy of submitting claims for services rendered by mid-level providers

MEMORANDUM OPINION AND ORDER – PAGE 1

as though a physician had rendered them to increase reimbursements; (4) submitting claims even though the underlying medical records had not been completed or signed; (5) performing annual physicals and changing the procedure codes to induce Medicare to pay for them; (6) billing Medicare for procedures performed by medical assistants even though Medicare does not pay for medical assistants to perform the billed services; and (7) ordering and billing for a standard panel of diagnostic laboratory tests for patients' annual wellness visits knowing Medicare does not pay for those tests. *See* Court's Charge 11 [632].

Following a two-week trial, the jury rendered a verdict finding HCAT liable for violating the FCA. *Id.* at 7. The jury found that HCAT submitted 21,844 false claims to Medicare, resulting in $2,753,641.86 in actual damages to the government. *Id.* at 15, 22. The jury also found all defendants liable for conspiracy to violate the FCA. *Id.* at 17. The Court subsequently dismissed the conspiracy claims against all defendants under the intra-corporate conspiracy doctrine. Mem. Op. & Order 3–5 (Feb. 26, 2025) [643]. The Court further determined that the FCA's minimum civil penalty of $299,197,200 constituted an excessive fine under the Eighth Amendment as applied to this case and reduced the penalty to $8,260,925.58 — three times actual damages. *Id.* at 11–17. The Court also concluded there was sufficient evidence to support the jury's verdict on the number of false claims and amount of damages and entered final judgment in favor of the government on its FCA claim against HCAT. *See id.* at 5–11; Final Judgment 1 [644]. HCAT now moves for a new trial and renews its motion for judgment as a matter of law. *See* Def.'s Br. New Trial 1–2 [652]; Def.'s Br. Judgment 1 [655].

MEMORANDUM OPINION AND ORDER – PAGE 2

## II. LEGAL STANDARDS

### A. New Trial

Under Rule 59, a court can grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). Whether to grant or deny the motion is within "the sound discretion of the trial court." *Id.* "The district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 296–97 (5th Cir. 2025) (cleaned up) (quoting *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019)).

### B. Judgment as a Matter of Law

Rule 50 provides that a court may enter judgment as a matter of law against a party where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). "A district court must deny a motion for judgment as a matter of law 'unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). In doing this

analysis, the court must consider all evidence in the light most favorable to the nonmovant and draw all factual inferences in favor of the nonmovant. *Holmes v. Reddoch*, 117 F.4th 309, 315 (5th Cir. 2024). When, as here, the case was tried to a jury, the standard of review is especially deferential. *Lewis*, 134 F.4th at 291.

### III. THE COURT DENIES HCAT'S MOTION FOR NEW TRIAL

HCAT moves for a new trial under Rule 59 on the grounds that (1) the jury charge contained legally deficient theories of liability; (2) the charge does not comport with HCAT's requested instructions on various points; (3) the jury was permitted to consider undisclosed expert testimony; and (4) evidentiary issues warrant a new trial. For the reasons below, the Court denies this motion for new trial.

#### A. *The Charge Does Not Contain Legal Infirmities*

First, HCAT argues that the following theories of liability included in the charge are legally deficient: (1) reverse false claims; (2) "wrong provider" or "split billing" claims; (3) "incident to" claims; and (4) "uncredentialed/unlicensed" claims. Def.'s Br. New Trial 3–11. The Court takes each of these arguments in turn.

Rule 49 "provides district courts with broad discretion to frame written questions to the jury." *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 F. App'x 253, 261 (5th Cir. 2017) (unpub.) (per curiam) (citing *Cent. Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 381 (5th Cir. Unit A Oct. 1981)). "A challenge to jury instructions must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Price v. Rosiek Constr. Co.*, 509 F.3d 704, 708 (5th

Cir. 2007) (per curiam) (quoting *Thomas v. Tex. Dept. of Crim. Just.*, 297 F.3d 361, 365 (5th Cir. 2002)).

First, it is within the Court's discretion to submit the "reverse false claim" theory to the jury and to do so within one general liability question. "Although parties are barred from recovering damages based on mutually exclusive theories, parties can properly plead alternative, inconsistent theories of liability and can properly argue alternative claims to the jury." *Laurence v. Atzenhoffer Chevrolet*, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003) (citations omitted). The FCA creates liability both for submitting a false claim to the government ("presentment") and for failing to pay the government money the defendant has an obligation to pay ("reverse false claim"). 31 U.S.C. § 3729(a)(1)(A), (G).

HCAT argues that Taylor's reverse false claim theory is not viable as a matter of law because a failure to pay back monies received from a previously submitted false claim cannot be a separate liability theory. *See* Def.'s Br. New Trial 5–6. But regardless of whether this assertion is correct in a general sense, here, in this Medicare overpayment context, the applicable law makes it clear that payees have an affirmative duty to repay any overpayments received from Medicare. *See* 31 U.S.C. § 3729(b)(3) (defining "obligation" to include "the retention of any overpayment"); 42 U.S.C. § 1320a-7k(d)(1)(A) (requiring Medicare payees to report and return all overpayments); *Id.* § 1320a-7k(d)(4)(B) (defining "overpayment" as "any funds that a person receives or retains under [Medicare] to which the person, after applicable reconciliation, is not entitled").

Taylor pled and argued to the jury both a reverse false claims theory and a presentment theory. *See* Rel.'s Second Am. Compl. ¶¶ 226–40 [89]; Trial Tr. Nov. 15,

2024, at 31:4–32:12. The Court instructed the jury on the requirements for both theories in one liability question. *See* Court's Charge 7–9. The Court further instructed the jury not to double-count claims when calculating damages. *Id.* at 24. Accordingly, the Court determines that the inclusion of a reverse false claim theory was warranted, and the inclusion of multiple theories of liability in one question did not create "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *See Price*, 509 F.3d at 708.

Second, the Court concludes that HCAT's challenges to the legal sufficiency of Taylor's "wrong provider," "incident to," and "uncredentialed/unlicensed" theories are without merit. On these theories, HCAT repackages arguments it already made both during the jury charge conference and in its brief opposing Taylor's motion for entry of judgment. *See* Defs.' Resp. Mot. Judgment 8 [640]. The Court already addressed these arguments in granting Taylor's motion for entry of judgment, Mem. Op. & Order 5–10 (Feb. 26, 2025), and declines to reconsider its previous rulings. Thus, the Court denies HCAT's motion for new trial based on purported infirmities in the jury charge.

### B. The Court Properly Declined HCAT's Requested Charge Language on Claim Count and Materiality

HCAT next argues that the Court's refusal to include certain of HCAT's requested jury instructions necessitates a new trial. Specifically, HCAT challenges (1) the lack of instruction requiring the jury to specify the number of false claims by category and (2) the

charge's definition of materiality. Def.'s Br. New Trial 17–18. However, reviewing these arguments in turn, the Court concludes that no new trial is warranted.[1]

District courts "have substantial latitude in crafting jury instructions." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004). A court's refusal to give a requested jury instruction constitutes reversible error only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim or defense. *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 489 (5th Cir. 2008); *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001).

First, it was within the Court's discretion to submit a general question on liability and number of claims as opposed to requiring a category-by-category breakdown. There is no need to have the claim count split by category, as for civil penalties, only the total number of claims is relevant under the statute. And the definition of "claim" in the charge makes it unlikely the jury would engage in double-counting. The charge defines "claim" as "a request or demand for money made to an agency or contractor of the United States Government." Court's Charge 9. And in Question 2, the jury was asked: "How many false claims did each Defendant . . . knowingly submit or cause to be submitted?" *Id.* at 15. While Taylor argued that some claims could be false for multiple reasons, the jury was

---

[1] Beyond these two arguments, HCAT briefly challenges eighteen additional purported issues with the Charge. *See* Def.'s Br. New Trial 18–20. The Court has already addressed these issues in refusing to adopt HCAT's proposed language on those points and declines to readdress those rulings here.

MEMORANDUM OPINION AND ORDER – PAGE 7

sufficiently instructed to count the claims themselves, not the total number of falsities. Accordingly, the Court cannot say that a total claim count instruction "seriously impaired" HCAT's ability to present any defense. *See Travelers Cas. & Sur. Co.*, 542 F.3d at 489.

Second, the Court stands by the Charge's definition of materiality. The Court charged the jury that under the FCA, "the term 'material' means having a natural tendency to influence or be capable of influencing the payment or receipt of money or property." Court's Charge 10. This language is a verbatim recitation of the statutory definition of materiality in the FCA. *See* 31 U.S.C. § 3729(b)(4). HCAT argues that because the government continued paying claims from HCAT after it was aware of Taylor's allegations, there is a substantially increased burden for her to prove materiality. *See* Def.'s Br. New Trial 18 (citing *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017)). However, the Court views that any exclusion of a specific instruction on this point did not seriously impair HCAT's ability to make this argument about materiality. HCAT in fact did bring evidence on this point. *See* Trial Tr. Nov. 11, 2024, at 62:12–63:11 (testimony of Dr. Feehery that the government never sought reimbursement after Taylor filed her complaint in this case). Likewise, Taylor adduced her own evidence that these claims would not have been paid had the government known the truth, *see, e.g.*, *id.* at 206:8–15, and that simply being presented with the allegations in this lawsuit would not be enough for Medicare to cease payments as it would instead wait until a final judgment or determination from an enforcement body before stopping payments. *Id.* at 247:17–248:23. The jury was entitled to give more weight to Taylor's evidence than HCAT's. Accordingly, no new trial is warranted on this basis.

MEMORANDUM OPINION AND ORDER – PAGE 8

### C. The Court Did Not Err in Admitting Expert Evidence

Next, HCAT challenges the Courts admission of two of Relator's exhibits, 1191 and 1020, by asserting Taylor disclosed them too late and they were substantially different than the previously disclosed expert opinions. Def.'s Br. New Trial 12–15. However, the Court concludes no new trial is warranted on these grounds.

A new trial may be granted when a party is a victim of unfair surprise evidence, but only where "the admission of the surprise testimony actually prejudiced the [party's] case." *Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 112 (5th Cir. 1982). Denial of a new trial on surprise grounds is reversible error only when "a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify." *Id.*

Here, however, there is no concern of completely new issues or unidentified experts. HCAT challenges two exhibits prepared by Taylor's experts that provide claim-level data organized by falsity category. Melissa Scott, an expert witness for Taylor, submitted a pretrial written report identifying each purported false claim and grouping them into thirty separate falsity categories. *See* Rel.'s 702 Resp. J. Appx. 7822 [444-1]. Exhibit 1191 is a claim-level spreadsheet that groups the claims into five broader categories of falsity. *See* Ex. 1191. Taylor provided exhibit 1191 to HCAT the night before it was to be used at trial. Def.'s Br. New Trial 12. Taylor also provided a cross-reference sheet identifying how Scott's thirty original categories were condensed into five groups. *See* Rel.'s Appx. New Trial Exs. A-1, A-2 [666-1]. Thus, this is plainly not a situation of a "completely new issue" or testimony by a previously unidentified expert. While Scott chose to repackage

MEMORANDUM OPINION AND ORDER – PAGE 9

her opinions into broader groups than provided in her original opinion, the universe of claims data she was working from was the same. And she testified extensively about the different categories and was likewise subject to cross-examination by HCAT over this exhibit. The Court does not view that admission of this evidence was erroneous, much less that it warrants a new trial.

As for Exhibit 1020, it is also a claim-level spreadsheet, but one that lists the dollar amount of the claims and was used to support Dr. Krock's testimony about damages. *See* Ex. 1020. HCAT likewise challenges this exhibit as untimely and substantially different. And likewise, the Court concludes that its admission was not erroneous and does not warrant a new trial. Exhibit 1020 was initially used as a demonstrative in support of Dr. Krock's trial testimony. Days after Dr. Krock testified, the Court granted Taylor's motion to admit the spreadsheet into evidence. In doing so, the Court offered to allow HCAT to recall Dr. Krock for further examination about the spreadsheet, but HCAT never did so. *See* Trial Tr. Nov. 11, 2024, at 138:22–139:5. Similar to Exhibit 1191, Exhibit 1020 is a repackaging of the damages opinions Dr. Krock originally offered. It still works from the same universe of claims data. Dr. Krock testified extensively about the numbers and his methodology, and HCAT had the opportunity to cross-examine him on those issues at trial. *See* Trial Tr. Nov. 7, 2024, at 118:3–143:3, 148:12–155:4. Accordingly, there is no sufficiently severe surprise issue with Exhibit 1020 to warrant a new trial.

### D.  *No Other Purported Evidentiary Errors Warrant a New Trial*

Finally, HCAT challenges four purported errors in the admission of evidence that it believes entitle it to a new trial: (1) admission of HCAT documents through Taylor's

MEMORANDUM OPINION AND ORDER – PAGE 10

experts; (2) admission of "corporate conduct" evidence or evidence about ankle-brachial index ("ABI") or "Sudoscan" tests; (3) lack of a specific remedial instruction after the Court sustained an objection to an expert's legal conclusion; and (4) admission of "prior bad acts" evidence. Def.'s Br. New Trial 20–25. The Court takes each argument in turn.

First, there was no error in admitting internal HCAT emails and medical notes through Taylor's experts. HCAT conceded at trial that these documents were authentic. *See, e.g.*, Trial Tr. Nov. 6, 2024, at 54:23–55:9. And there is no applicable prohibition in the Federal Rules of Evidence on experts testifying about admissible (and duly admitted) documents they relied upon in forming their opinions. Accordingly, admission of these authentic emails and progress notes via Taylor's experts was not error and does not warrant a new trial.

Second, the Court generally resolved the issues of "corporate conduct" testimony and ABI and Sudoscan evidence in its pretrial Memorandum Opinion and Order denying HCAT's motions to exclude experts. *See* Mem. Op. & Order 21–22, 25–26, 35–36, 41–42 (Oct. 15, 2024) [574]. The evidence at trial comported with these pretrial rulings, and the Court declines to revisit them.

Third, HCAT's argument that the Court should have given a curative instruction after it sustained an objection to one witness's answer is without merit. Juliette Morell, a nonretained expert, gave an improper legal conclusion at trial, stating that the practice of submitting a claim based on a diagnosis the patient did not have would be a false claim. *See* Trial Tr. Nov. 11, 2024, at 106:3–6. HCAT immediately objected to the legal conclusion, and the Court sustained that objection. *Id.* at 106:8–10. HCAT, however, did

MEMORANDUM OPINION AND ORDER – PAGE 11

not move for a curative instruction and has therefore forfeited its argument on that point. *See Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 646 (S.D. Tex. 2019) (concluding party forfeited argument about jury instruction where party did not request the instruction at or before trial); *see also* FED. R. CIV. P. 51(d)(1) ("A party may assign as error . . . a failure to give an instruction, if that party properly requested it . . . ."). Furthermore, at the outset of trial, the Court instructed the jury to ignore any questions to which the Court sustains an objection. Jury Instrs. Tr., Nov. 4, 2024, at 5:1. And "juries are presumed to follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Accordingly, no new trial is warranted on this basis.

Fourth, there was no error in admitting "prior bad acts" evidence. HCAT specifically challenges certain evidence pertaining to its billing practices for commercial insurance plans as opposed to Medicare. *See* Def.'s Br. New Trial 24. To the extent evidence about non-Medicare billing practices was admitted, it is relevant to the issue of knowledge under the FCA and is admissible evidence of HCAT's plan or absence of mistake in this case. *See* FED. R. EVID. 404(b)(2).

Having concluded that no errors in the jury instructions or the admission of evidence warrant a new trial in this matter, the Court denies HCAT's motion for new trial.

### IV. THE COURT DENIES HCAT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The Court next denies HCAT's renewed motion for judgment as a matter of law. The Court already addressed many of HCAT's arguments about the sufficiency of the evidence in granting Taylor's motion for entry of judgment. *See* Mem. Op. & Order 5–11

(Feb. 26, 2025). To the extent HCAT raises additional sufficiency-of-the-evidence arguments, after considering all the evidence and drawing all reasonable inferences in favor of the nonmoving party, the Court again concludes there is sufficient evidence to support the jury's verdict.

HCAT now also reasserts the argument that the FCA's qui tam provisions are unconstitutional. *See* Def.'s Br. Judgment 18–19. The Court views that these arguments are foreclosed by binding Fifth Circuit precedent. *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) (en banc) (holding the FCA's qui tam device does not violate the Take Care Clause or the Appointments Clause). Accordingly, the Court denies HCAT's renewed motion for judgment as a matter of law.

## CONCLUSION

For the reasons above, the Court denies HCAT's motion for new trial and renewed motion for judgment as a matter of law.

Signed July 8, 2025.

_____
David C. Godbey
Chief United States District Judge